IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EDWARD KENNETH FERRELL          :

   v.                           :   Civil Action No. DKC 04-2896
                                    Criminal Case No. DKC 01-0600
UNITED STATES OF AMERICA        :

**MEMORANDUM OPINION**

Presently pending and ready for resolution is a *pro se* motion filed by Petitioner Edward Kenneth Ferrell to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Paper 85). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Petitioner's motion will be denied.

**I.   Background**

Police officers discovered heroin, phencyclidine (PCP), and a handgun concealed in the dashboard vents of a car driven by Petitioner to the scene of a controlled drug buy. Kenneth Crawford was a passenger. *See United States v. Crawford*, 75 Fed.Appx. 116, 117 (2003) (per curiam). Petitioner was subsequently charged, by superseding indictment, with possession with intent to distribute heroin and phencyclidine, in violation of 21 U.S.C. § 841 (counts I and II); conspiracy to distribute

and possess with intent to distribute heroin and phencyclidine, in violation of 21 U.S.C. §§ 841 and 846 (count III); and possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c) (count IV).

The case proceeded to a jury trial on June 18, 2002. On June 24, the jury returned a verdict finding Petitioner guilty of possession with intent to distribute heroin and conspiracy to distribute and possess with intent to distribute heroin, the first and third counts of the indictment. The jury was unable to reach a verdict as to the remaining charges, which were subsequently dismissed by the Government.

A sentencing hearing was held on September 9, 2002. Citing trial testimony that Petitioner accompanied Mr. Crawford to a drug sale on one occasion prior to the date of his arrest, the Government argued that a minimum of 40.76 grams of heroin were attributable to Petitioner, thereby warranting a base offense level of 20. (Paper 95, Ex. A, sentencing transcript, at 6-7). Petitioner's counsel contended that a base offense level of 18 was appropriate, as only approximately 39 grams of heroin could be attributed to Petitioner. (*Id*. at 8).

The court determined the appropriate base offense level was 20, explaining as follows:

> I conclude that the amounts of drugs that
> should be attributable Mr. Ferrell is at the

> Level 20, that is, more than 40 but less than 60 grams of heroin.
>
> The physical quantities that we have – that the report quantifies gets very close to the 40 to begin with. The currency and the indication to me in evidence, not in speculation, that Mr. Ferrell was associated with this car and Mr. Crawford on other occasions, indicates to me that it's a reasonable assessment of the amount of drugs involved for which he is responsible is over that 40-gram threshold.

(*Id.* at 14).

The Government also argued in favor of a two-level upward adjustment to the base offense level, pursuant to U.S.S.G. § 2D1.1(b)(1), due to the handgun that was recovered from the vehicle. (*Id.* at 15). In response, defense counsel contended that the gun enhancement could not apply because Petitioner did not actually possess the weapon. Observing that the jury was unable to reach a verdict with respect to the gun charge, counsel asserted, "[w]e must conclude that the jury did not find either defendant aware of that firearm or they would have, just like they did for the heroin and conspiracy, [found] them guilty of that." (*Id.* at 18).

As to this issue, the court found as follows:

> I, unlike the jury – of course, there's only one of me rather than 12 – have no hesitation in concluding that both Mr. Ferrell and Mr. Crawford were similarly well aware of the firearm that was hidden in one of those vents. I conclude this based upon what I think is a permissible and fair

3

> inference, that if you're using a car for drug dealing, which was being openly done on this occasion, as well as the other time by Mr. Crawford – there was no hiding from the passenger or from the driver if the other person was the one reaching for the quantity that was hidden, that that's what was going on, that firearms are a tool of the trade, a necessary attribute of drug dealing, and I draw the inference, based upon the evidence, that both of the defendants knew that the firearm was there, they both possessed it, and that there is no evidence that it's at all improbable that the firearm was unconnected or connected, whichever the word is I'm supposed to find here. In any event, I find that the firearm was possessed for purposes of protection during drug trafficking that was taking place in that vehicle and, accordingly, the two-level upward adjustment under 2D1(b)(1) applies in paragraph 20.

(*Id.* at 21-22).

The addition of the two-level upward adjustment resulted in an offense level of 22. A criminal history category of V was found to be appropriate, resulting in a sentencing range of 77 to 96 months. (*Id.* at 48). The court sentenced Petitioner to a term of incarceration of 78 months, imposed consecutively to a 20-month term for a parole violation, to be followed by a six-year term of supervised released. (*Id.* at 54).

Petitioner appealed to the United States Court of Appeals for the Fourth Circuit, challenging the amount of heroin attributed to him at sentencing and the enhancement for possession of a weapon during a drug transaction. On September

15, 2003, the appellate court affirmed Petitioner's sentence, *see United States v. Crawford*, 75 Fed.Appx. 116 (4th Cir. 2003) (per curiam), and he did not seek further review in the Supreme Court of the United States.

On September 8, 2004, Petitioner timely filed the instant § 2255 motion, arguing that (1) pursuant to *Blakely v. Washington*, 542 U.S. 296 (2004), his sentence was imposed in violation of the Fifth and Sixth Amendments to the United States Constitution; (2) § 2D1.1(b) of the Federal Sentencing Guidelines is unconstitutional on its face and as applied in this case; (3) because 21 U.S.C. § 841 lacks an essential element, his indictment failed to charge a crime as to the two counts of which he was convicted; (4) the court did not permit the jury to consider the amount of heroin involved in the conspiracy, which was a "critical and essential element" of the crime; and (5) his counsel at sentencing and on appeal rendered ineffective assistance. (Paper 85).

## II. Standard of Review

To prevail on a motion pursuant to 28 U.S.C. § 2255, a petitioner must demonstrate, by a preponderance of the evidence, that

> the judgment [of conviction] was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement

> of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack. . . .

28 U.S.C. § 2255(b). If this showing is made, the court must "vacate and set the judgment aside" and "discharge the prisoner or resentence him or grant a new trial to correct the sentence as may appear appropriate." *Id*. If, on the other hand, "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the court may summarily deny the petition without holding a hearing. *Id*.

A district court's review of a § 2255 petition, therefore, "proceeds in two steps":

> First, the district court must determine whether the prisoner has met his burden of showing that his sentence is unlawful on one of the specified grounds. Second, if the prisoner's sentence is found unlawful on one of those grounds, the district court should grant the prisoner an "appropriate" remedy, which includes discharge, resentencing, or a new trial. If the prisoner fails to show that his sentence is unlawful on one of the specified grounds under the threshold inquiry, however, "the court must deny the petition."

*United States v. Pettiford*, 612 F.3d 270, 277 (4th Cir. 2010) (internal marks and citations omitted).

While relief is not limited to constitutional error, the scope of review of non-constitutional error is limited: "nonconstitutional error does not provide a basis for collateral attack unless it involves a fundamental defect which inherently

6

results in a complete miscarriage of justice, or is inconsistent with the rudimentary demands of fair procedure." *United States v. Mikalajunas*, 186 F.3d 490, 495-96 (4th Cir. 1999) (internal marks and citations omitted). Moreover, a § 2255 petitioner may only raise issues that have not been waived, unless they meet the requirements of a very narrow exception:

> In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains. The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel.

*Pettiford*, 612 F.3d at 280 (internal marks and citations omitted).[1]

**III. Analysis**

Petitioner initially argues that *Blakely v. Washington*, 542 U.S. 296 (2004), bars the enhancement of a sentence based on facts determined by the sentencing judge that were neither

---

[1] Here, the Government does not contend that any of Petitioner's claims have been procedurally defaulted; thus, the court need not determine whether cause and prejudice excuse any default before deciding the merits. *See Welch v. United States*, 604 F.3d 408, 413 (7th Cir. 2010) ("the Government has waived any procedural default argument by failing to address the issue in its brief"); *United States v. Mooring*, 287 F.3d 725, 727 (8th Cir. 2002) (same); *United States v. Perkins*, 161 F.3d 66, 71 (C.A.D.C. 1998) (finding that the court retained discretion to consider whether claims were procedurally defaulted, but declining to do so where the petitioner's claims were clearly non-meritorious).

7

admitted by the defendant nor found by a jury. Thus, he contends, the court's finding that over 40 grams of heroin were attributable to him, thereby establishing a base offense level of 20, was in violation of his rights under the Fifth and Sixth Amendments.

It is true, as Petitioner asserts, that the Supreme Court held in *Blakely*, 542 U.S. at 303-05, that imposition of a sentencing enhancement based solely on a sentencing court's factual findings violates the Sixth Amendment. That case, however, invalidated a sentencing scheme employed by the State of Washington. The Court "express[ed] no opinion" as to the application of that rule to the federal sentencing guidelines. *Id*. at 305 n.9; *see also United States v. Hammoud*, 378 F.3d 426 (4th Cir. 2004) (*en banc* order finding that *Blakely* did not apply to sentences under the guidelines). It was not until *United States v. Booker*, 543 U.S. 220, 243-44 (2005), that the Court held that *Blakely* applies to the federal guidelines and, consequently, that the Sixth Amendment is violated when a district court imposes a mandatory sentence under the guidelines that is greater than the maximum authorized by the facts determined by the jury alone. Thus, Petitioner's claim in this regard is, technically, governed by *Booker*, rather than *Blakely*. *See United States v. Morris*, 429 F.3d 65, 69 n.5 (4th Cir. 2005)

(citing *Lloyd v. United States*, 407 F.3d 608, 611 (3rd Cir. 2005)).[2]

In *Morris*, 429 F.3d at 72, the Fourth Circuit determined that although *Booker* announced a new rule of criminal procedure, it was "not a watershed rule," and thus "is not available for post-conviction relief for federal prisoners . . . whose convictions became final before *Booker* (or *Blakely*) was decided." In so holding, this circuit joined nine others that had previously considered the issue and "held that *Booker* does not apply retroactively to cases on collateral review." *Id*. at 66. Here, Petitioner's sentence was affirmed on September 15, 2003, and his conviction became final on or about December 15, 2003, when the time expired for filing a petition for a writ of *certiorari* in the Supreme Court. *See Clay v. United States*, 537 U.S. 522, 527 (2003) ("Finality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires."); 28 U.S.C. § 2101(c) (a petition for a writ of *certiorari* must be filed within ninety days after the entry of the judgment appealed from). *Blakely* was decided

---

[2] In the memorandum accompanying his petition, Petitioner "move[d] to reserve all rights as to the Supreme Court[']s upcoming decision[]" in *Booker*. (Paper 85, memorandum, at 19). Shortly after the Supreme Court decided that case, he moved to supplement, asking the court to consider his petition in light of *Booker*. (Paper 92). This motion will be denied as moot.

9

on June 24, 2004, approximately six months after Petitioner's conviction became final, and *Booker* was decided on January 12, 2005. Because Petitioner's conviction became final well before either *Blakely* or *Booker* was decided, his Sixth Amendment challenge cannot prevail.

Petitioner's argument under the Fifth Amendment appears to be that the court violated the Due Process Clause by adopting factual findings based on a preponderance of the evidence standard, rather than requiring proof beyond a reasonable doubt. Even after *Booker*, however, a district court may properly make factual findings concerning sentencing factors by a preponderance of the evidence. *See United States v. Gray*, 253 Fed.Appx. 321, 323-24 (4th Cir. 2007) (per curiam) (citing *Morris*, 429 F.3d at 72). Thus, insofar as Petitioner alleges a Fifth Amendment violation, his argument is unpersuasive.

At the time of Petitioner's sentencing hearing, the constitutional limits of sentencing enhancement were governed by *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In that case, the Supreme Court held that a New Jersey statute permitting a sentencing court to enhance a defendant's sentence beyond the maximum prescribed by statute was unconstitutional. The Court explained that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the

prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490.

The Fourth Circuit considered whether *Apprendi* affected sentencing practices under the federal sentencing guidelines in *United States v. Kinter*, 235 F.3d 192 (4th Cir. 2000). In that case, the sentencing judge enhanced the defendant's offense level under the guidelines based upon factual findings, by a preponderance of the evidence, which increased the defendant's sentence above the maximum guidelines range, but not above the statutory maximum for the offense in question. On appeal, the defendant argued, *inter alia*, that *Apprendi* required those facts to be "submitted to a jury and proven beyond a reasonable doubt before they could form the basis of an enhancement of his sentence." *Kinter*, 235 F.3d at 199. The Fourth Circuit rejected this argument, holding that

> [b]ecause *Apprendi* does not apply to a judge's exercise of sentencing discretion within a statutory range, the current practice of judicial factfinding under the Guidelines is not subject to the *Apprendi* requirements – at least so long as that factfinding does not enhance a defendant's sentence beyond the maximum term specified in the substantive statute.

*Id.* at 201.

In light of *Apprendi* and *Kinter* – and considering the fact that the guidelines were, at the time of the sentencing hearing, "mandatory and binding on all judges," *Booker*, 543 U.S. at 233 –

11

there is no question that Petitioner's sentence was within constitutional limits. The sentencing record makes clear the court's awareness that enhancements were subject to the limits prescribed by *Apprendi*:

> Under [U.S.S.G.] 2D1.1, I need to refer to the drug quantity table in order to determine a base offense level. I don't believe that Apprendi yet applies to this aspect of the [c]ourt's determination. The statutory permissible penalties are indeed governed by Apprendi, but not my determination for sentencing purposes as to where within the otherwise lawful sentencing range to impose sentence.

(Paper 95, Ex. A, sentencing transcript, at 13). The statutory maximum term of incarceration for the crime of which Petitioner was convicted was 20 years. *See* 21 U.S.C. § 841(b)(1)(C). The sentence imposed, by contrast, was a term of 78 months, *i.e.*, six and one-half years, in federal custody. Because Petitioner's sentence was for significantly less than the twenty-year maximum, it was well within constitutional limits and entirely consistent with Supreme Court and Fourth Circuit precedent applicable at that time. *See Kinter*, 235 F.3d at 201.

Petitioner further contends that U.S.S.G. § 2D1.1(b) is unconstitutional on its face and as applied in this case. Specifically, he complains that the court's two-level upward adjustment based upon its finding that he possessed a gun in relation to a drug trafficking crime violated the "Trial of

12

Crimes Clause" found at Art. III, section 2, of the Constitution; the Privileges and Immunities Clause of Article IV, section 2; the Presentment, Indictment, Double Jeopardy, and Due Process Clauses of the Fifth Amendment; the rights to notice and trial by jury guaranteed by the Sixth Amendment; and the Tenth Amendment. (Paper 85, memorandum, at 8-11). While the substance of his argument under these provisions is difficult to discern, the general thrust is that the court could not impose the gun enhancement at sentencing due to the jury's failure to return a verdict on the count of his indictment alleging that he possessed a handgun in relation to a drug trafficking offense.

The Fourth Circuit considered a similar claim, albeit on direct appeal, in *United States v. Romulus*, 949 F.2d 713 (4th Cir. 1991). In that case, the defendant was charged with possession with intent to distribute crack cocaine and carrying a firearm in relation to a drug trafficking crime. At trial, the defendant testified that he did, in fact, possess the drugs, but denied possession of the gun. The jury convicted him of the drug charge, but acquitted as to the firearm offense. Nevertheless, the sentencing court "found as a factual matter that [the defendant] possessed the revolver and enhanced [his] offense level by two levels for possessing a dangerous weapon during the commission of the drug offense." *Romulus*, 949 F.2d at 716. On appeal, the defendant asserted that imposition of

the gun enhancement violated his rights under the Due Process and Double Jeopardy Clauses of the Fifth Amendment. The court rejected that argument, stating as follows:

> It is well settled that acquitted conduct may properly be used to enhance a sentence once a requisite finding is made by the sentencing judge. *United States v. Isom*, 886 F.2d 736 (4th Cir.1989) (Due Process not violated by district court considering as basis for enhancement conduct of which defendant was acquitted); *United States v. Rodriguez-Gonzalez*, 899 F.2d 177 (2d Cir.); *cert. denied*, 498 U.S. 844, 111 S.Ct. 127, 112 L.Ed.2d 95 (1990) (neither Double Jeopardy or Due Process Clauses prohibited enhancement on the basis of conduct for which defendant was acquitted).

*Id*. at 716-17; *see also United States v. Boney*, 977 F.2d 624, 636 (C.A.D.C. 1992) ("Conduct underlying the acquittal may be used in sentencing as long as it is proved by a standard that satisfies due process," which is "by a preponderance of the evidence").

Thus, even if Petitioner had been acquitted on the firearm count, the gun enhancement would not have violated his rights under the Fifth Amendment. His Sixth Amendment challenge in this regard appears to be indistinguishable from the argument he advances under *Apprendi*, *Blakely*, and *Booker*, and will fail for the same reasons. To the extent that he cites other constitutional provisions as a basis for relief – *i.e.*, the "Trial of Crimes Clause," Privileges and Immunities Clause, and

14

the Tenth Amendment – he provides no support for these claims, nor do they appear to have any application. Accordingly, the petition will be denied as to this ground.

Petitioner next argues that 21 U.S.C. § 841 is unlawful because the authority of Congress, and the jurisdiction of the United States, is not apparent in the language of the statute; consequently, his indictment was defective because it failed to specify every element necessary for this crime. According to Petitioner, his indictment was required to describe a connection between the alleged unlawful acts and interstate commerce. As support, he cites *United States v. Lopez*, 2 F.3d 1342, 1368 (5th Cir. 1993), for the proposition that "[a]n indictment that fails to allege a commerce nexus, where such a nexus is a necessary element of the offense, is defective." This argument is based on a misreading of *Lopez*. That case addressed the propriety of the defendant's conviction of possessing a firearm in a school zone in violation of the Gun-Free School Zones Act, which provided, "[i]t shall be unlawful for any individual knowingly to possess a firearm at a place that the individual knows, or has reasonable cause to believe, is a school zone." *Id*. at 1345-46 (quoting 18 U.S.C. 922(g)(1)(A)). The Fifth Circuit determined that this statute was "invalid as beyond the power of Congress under the Commerce Clause." *Id*. at 1367-68. Still, the court explained, the defendant's conviction "might be

15

sustained if the government alleged [in the indictment] and proved that the offense had a nexus to commerce." *Id.* at 1368. Because the indictment "fail[ed] to allege a commerce nexus," however, it was defective. Thus, in *Lopez*, the problem with the indictment stemmed from a problem with the underlying statute.

Here, Petitioner was charged with, and convicted of, violating the Controlled Substances Act, 21 U.S.C. § 801, *et seq.* ("CSA"). It is well established that Congress acted within its authority under the Commerce Clause in enacting this statute. *See Gonzales v. Raich*, 545 U.S. 1, 15 (2005) ("passage of the CSA, as part of the Comprehensive Drug Abuse Prevention and Control Act, was well within Congress' commerce power"); *United States v. Leshuk*, 65 F.3d 1105, 1112 (4th Cir. 1995) ("Congress may regulate intrastate drug activities under the Commerce Clause"). Because the underlying statute is valid, Petitioner's indictment was not defective, and his claim to the contrary is without merit.

Petitioner's argument that the court violated his constitutional rights by failing to submit to the jury a "critical and essential element" of a charged offense also appears to be based on a misunderstanding. The third count of Petitioner's indictment alleged that he and Mr. Crawford conspired "to distribute and possess with intent to distribute more than 100 grams of . . . heroin," in violation of §§ 21

U.S.C. 846 and 841.  Petitioner now complains that the court did not require the jury to find that he possessed "more than 100 grams," as he believes it was required to do under the relevant statute.  Section 841, however, does not specify a minimum quantity of heroin needed for conviction.  Rather, it provides that "it shall be unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance[.]"  21 U.S.C. § 841(a)(1) (2001).  Thus, the "more than 100 grams" language in the indictment was mere surplusage, and certainly was not a "critical and essential element" of the offense.

Finally, Petitioner contends that his attorneys rendered ineffective assistance because they failed to argue, at sentencing and on appeal, that the court's findings regarding the firearm and the drug quantity attributable to him were unlawful under *Apprendi*.

The standards governing constitutionally ineffective assistance of counsel claims are well settled under *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail on a claim of ineffective assistance of counsel, Petitioner must show both that his attorney's performance fell below an objective standard of reasonableness and that he suffered actual prejudice.  *See Strickland*, 466 U.S. at 687.  To demonstrate actual prejudice,

he must show there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

Under *Strickland*, there exists a strong presumption that counsel's conduct was within a wide range of reasonably professional conduct, and courts must be highly differential in scrutinizing counsel's performance. *See id*. at 688-89; *Bunch v. Thompson*, 949 F.2d 1354 (4th Cir. 1991). Courts must judge the reasonableness of attorney conduct "as of the time their actions occurred, not the conduct's consequences after the fact." *Frye v. Lee*, 235 F.3d 897, 906 (4th Cir. 2000). Furthermore, a determination need not be made concerning the attorney's performance if it is clear that no prejudice would have resulted even had the attorney been deficient. *See Strickland*, 466 U.S. at 697.

As noted previously, Petitioner's sentence was clearly within the constitutional limits established by *Apprendi*. Thus, it is clear that no prejudice could have inured to Petitioner, even if his attorneys' performances in this regard had been deficient. Accordingly, his ineffective assistance of counsel claims cannot prevail.

## IV. Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Proceedings Under 28 U.S.C. §§ 2254 or 2255, the court is required to issue

or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007).

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies a motion on the merits, a prisoner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003). When the court denies relief on procedural grounds, the prisoner must demonstrate two elements: (1) that the dispositive procedural ruling is debatable, and (2) that the petition states a debatable claim of the denial of a constitutional right. Slack, 529 U.S. at 484-85; see also United States v. Sosa, 364 F.3d 507, 511 (4th Cir. 2004). Thus, regardless of the grounds for dismissal, there must always be a debatable constitutional claim.

Here, the court finds that Petitioner has failed to satisfy this standard. Accordingly, it declines to issue a certificate of appealability.

## V. Conclusion

For the foregoing reasons, Petitioner's § 2255 motion will be denied. A separate order will follow.

```
        /s/
DEBORAH K. CHASANOW
United States District Judge
```